IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02274-WJM-NRN

RYAN SHAWHAN KEHOE,

Plaintiff,

v.

RORY KOWALSKI, individually,
DANIEL COSTIN, individually, and
JES C. SANDOVAL, individually,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. #68)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #27) issued by Judge William J. Martinez referring Defendants Kowalski, Costin, and Sandoval's (collectively "Defendants") Motion for Summary Judgment. (Dkt. #68.) Plaintiff Ryan Shawhan Kehoe filed a response (Dkt. #72), and Defendants filed a reply. (Dkt. #74.) On October 19, 2021, the Court heard arguments on the subject motion. (*See* Dkt. #76.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (Dkt. #68) be **GRANTED**.

# **BACKGROUND**[1]

This lawsuit arises from Plaintiff Ryan Shawhan Kehoe's arrest on August 15, 2017. Mr. Kehoe filed suit under 42 U.S.C. § 1983, alleging that the officers did not have probable cause to arrest him and violated his Fourth Amendment right to be free from unreasonable searches and seizures.

## I.   Procedural History

Mr. Kehoe filed his Second Amended Complaint on November 8, 2019. (Dkt. #7.) He asserted three § 1983 claims for violation of the Fourth Amendment: the first against Officers Rory Kowalski and Daniel Costin in their individual and official capacities, the second against Detective Jes Sandoval in his individual and official capacities, and the third against the City and County of Denver ("Denver").

On February 13, 2020, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) seeking to dismiss all claims. (*See* Dkt. #25.) After hearing oral argument, the Court issued its recommendation that Mr. Kehoe's claims against Denver and the individual Defendants in their official capacities be dismissed, but that his claims against the individual Defendants in their personal capacity survive. (Dkt. #46.) On June 17, 2020, Judge Martinez adopted those recommendations. (Dkt. #47.) Thus, the sole remaining claims in this case are against Defendants Kowalski, Costin, and Sandoval in their individual capacities for violation of Mr. Kehoe's Fourth Amendment rights with respect to the search and seizure of his person.[2]

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Defendants argue that, to the extent Mr. Kehoe claims that the impoundment and inventory search of Mr. Kehoe's vehicle was unlawful, such claims fail as a matter of law. (Dkt. #68.) Mr. Kehoe argues otherwise. However, as this Court noted in its

2

The individual Defendants now jointly move for summary judgment as to all of Mr. Kehoe's claims, arguing that the search and seizure of Mr. Kehoe's person were compliant with the Fourth Amendment and, as a result, they are each entitled to qualified immunity. Mr. Kehoe argues that his arrest was not supported by probable cause because the facts asserted by Defendants are contradictory and unreliable. Mr. Kehoe also suggests that Defendants did not actually use a confidential source.

## II.    Factual History

The following undisputed facts are taken from Defendants' Motion for Summary Judgment (Dkt. #68) unless otherwise noted.[3] On August 15, 2017, Detective Sandoval received information from a confidential source that a drug sale would be taking place in the Best Buy parking lot located at 4100 E. Mexico Boulevard in Denver, Colorado. (*Id.* at ¶ 4.) Members of the Denver Police Department District 3 Narcotics Team were aware that such transactions were frequent in this area. (*Id.* at ¶ 3.) According to the confidential source, the individual who was to conduct the sale, "Ryan," was a white male with brown or reddish hair and would be driving into the parking lot with a silver or gray Infinity or a vehicle of a similar model (*Id.* at ¶¶ 4–5.) Moreover, the vehicle would

---

order on Defendants' Motion to Dismiss, "Mr. Kehoe did not allege any claims with respect to the impoundment of his vehicle in the Amended Complaint." (Dkt. #46 at 13.) Mr. Kehoe did not subsequently amend his complaint to sufficiently allege a claim based on the search of his vehicle. Therefore, the Court will not consider any such claims or facts related to them.

[3] The Court relies primarily on Defendants' statement of undisputed facts in part because Mr. Kehoe did not comply with Judge Martinez's Practice Standards, which, for example, required him to respond to Defendants' material facts with numbered paragraphs admitting or denying each of Defendants' asserted facts, and providing a factual basis for a denial. Further, as set forth more below, Mr. Kehoe has not offered any evidence sufficient to create a genuine dispute of material fact.

have left front fender damage repaired with "noticeable" Bondo auto body filler. (*Id.* at ¶ 5.)

Detective Sandoval relayed this information over the District 3 radio channel, and he requested that several members of the Narcotics Team set up around the parking lot. (*Id.* at ¶¶ 6–7) The confidential source, who remained with Detective Sandoval, informed him when "Ryan" was five minutes away from the lot. (*Id.*)

After five minutes, as predicted by the confidential source, a silver Lexus with a noticeable amount of Bondo on the front left fender pulled into the parking lot. (*Id.* at ¶ 8.) Though the vehicle was not an Infinity as noted by the confidential source, it was a similar model, had the same color, and contained the auto body filler on the part of the car pinpointed by the confidential source. (*Id.*) After the vehicle arrived at the parking lot, the confidential source told Detective Sandoval that the dealer relayed he had arrived in the parking lot. (*Id.* at ¶ 9.) After the driver of the vehicle parked and exited the vehicle, the confidential source confirmed to Detective Sandoval that the driver was the dealer. (*Id.* at ¶ 11.)

The officers ran a license plate clearance and learned that the car was not registered to an individual named "Ryan." (*Id.* at ¶ 10.) Continuing to observe the individual, the officers noticed the driver exit the vehicle and open the trunk. (*Id.* at ¶ 11.) The individual then walked towards the front of the car, leaving the door open and leaning on the hood. (*Id.*) Based on the information provided by the confidential source and the individual's behavior, Detective Sandoval advised the team to detain the driver. (*Id.*)

Officers Kowalski and Costin, who were aware of the investigation based on the radio traffic, parked behind the individual's vehicle and approached the driver. (*Id.* at ¶ 12.) The officers proceeded to arrest the individual, who identified himself as Ryan Kehoe. (*Id.*) Mr. Kehoe gave permission to Officer Kostin to turn off his vehicle. (*Id.* at ¶ 13.) While doing so, the latter noticed a large box sitting on the passenger seat, but he did not touch or move it at that time. (*Id.*) Mr. Kehoe also gave permission to the officers to retrieve the buyer's sheet for the vehicle, and he consented to a pat down of his pockets. (*Id.* at ¶¶ 13–15) During the interaction, the officers learned that Mr. Kehoe did not possess a valid driver's license and had a warrant out for his arrest for misdemeanor shoplifting." (*Id.* at ¶ 16) At this point, Officer Costin informed Mr. Kehoe that he was under arrest and subsequently read him his Miranda rights. (*Id.* at ¶ 16.)

Mr. Kehoe, for his part, argues that the "alleged informant's physical description of a drug dealer in Defendants' motion for summary judgment is contradictory to that of Defendants' statements made within the same discovery for the related criminal case." (Dkt. #72 at 4.) He further argues that there is no documentation from the confidential source about what information was provided, what the confidential source was paid, and whether the confidential source was eligible to serve as an informant pursuant to Denver Police policy. (*Id.*) In fact, he contests the existence of the confidential source in the first instance. (*Id.* at 5.)

## LEGAL STANDARDS

### I. Pro Se Litigants

Mr. Kehoe proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). This standard "applies to all proceedings involving a *pro se* litigant, including… summary judgment proceedings." *Espinoza-Horiuchi v. Walmart Stores, Inc.*, 2016 WL 1275494 at *1 (D. Colo. Mar. 7, 2016) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Calbart v. Denver Sheriff Dep't*, 505 F. App'x 703, 705 (10th Cir. 2012). Mr. Kehoe's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.     Motion for Summary Judgment under Rule 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the

nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Ultimately, the Court's inquiry

on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (1986).

### III. Qualified Immunity

Defendants raise qualified immunity as a defense to Mr. Kehoe's claims. Specifically, they assert that they did not violate any clearly established rule pertaining to Mr. Kehoe's arrest or the pat down of his pockets. The doctrine of qualified immunity protects government officials from individual liability while performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cnty., Kan.*, 847 F.3d 1192, 1197 (10th Cir. 2017). "Motions for summary judgment based on qualified immunity are treated differently than other summary-judgment motions." *Farrell v. Montoya*, 878 F.3d 933, 936–37 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff, who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)). "The judges of the district courts...[may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

8

be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## DISCUSSION

### I. Mr. Kehoe's Fourth Amendment claims for unreasonable seizure against all Defendants fail as a matter of law.

First, Defendants argue that because there was probable cause[4] to arrest Mr. Kehoe, he was not unreasonably seized under the Fourth Amendment. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated." U.S. Const. amend. IV. A Fourth Amendment "seizure" occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott*, 550 U.S. at 381. It has long been recognized that "the arrest of a person is 'quintessentially a seizure.'" *Torres v. Madrid*, 141 S. Ct. 989, 996 (2021) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)). Here, it is undisputed that Mr. Kehoe's warrantless arrest constituted a seizure under the Fourth Amendment.

### A. Information from a confidential source can give rise to probable cause.

"[A] warrantless arrest may . . . comport with the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."

---

[4] In their motion, Defendants to refer to both "reasonable suspicion" and "probable cause." (*See* Dkt. #68.) As the Court noted in its order on Defendants' Motion to Dismiss, these two standards apply to different situations. (Dkt. #46.) Defendants' argument relates only to "probable cause," thus, they seem to suggest that Mr. Kehoe was under arrest from the outset of their stop. Regardless, because probable cause to arrest someone is a higher standard than reasonable suspicion to temporarily detain someone, and probable cause existed here, the Court need not address the reasonable suspicion standard.

9

*Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015) (internal quotation marks omitted) (citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008)). Probable cause exists "when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed" and that the person or property was involved in the crime. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). "Probable cause is not a precise quantum of evidence." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Rather, the relevant question is whether there was a "substantial probability"—"something 'more than a bare suspicion'"—that the person or property was involved in a crime. *Id.* (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

Probable cause is assessed under an objective standard of reasonableness. *See* id. at 1141; *see also Cortez*, 478 F.3d at 1120 ("[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."); *United States v. Swingler*, 758 F.2d 477, 487 (10th Cir. 1985) ("The fact that such evidence would not be admissible for the purpose of proving guilt at trial d[oes] not . . . make it unusable as a source of probable cause."). When assessing probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Donahue v. Wihongi*,

948 F.3d 1177, 1189 (10th Cir. 2020) ("[C]ourts assess probable cause 'from the standpoint of an objectively reasonable police officer' under the totality of the circumstances.") (citation omitted).

Defendants argue that the information received from the confidential source, coupled with their independent observations and background knowledge on drug transactions, were sufficient to provide them with probable cause to carry out the arrest. According to the sworn statements of the officers, Detective Sandoval received information from a confidential source which formed a substantial basis for the determination that probable cause existed. "[A]n officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Illinois v. Gates*, 462 U.S. 213, 241 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960)) (internal quotations omitted).[5] Whether information gleaned from a confidential source can serve as the basis for probable cause is determined by the totality of the circumstances. *Id.* at 230–31. Relevant factors in the analysis include the source's veracity, reliability, and basis of knowledge. *Id.* at 230. "An informant's tip which provides highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity is more

---

[5] The Court notes that Defendants distinguish between a "confidential source" and an informant for purposes of municipal policy. (*See* Dkt. #74.) The cases cited by the Court do not appear to make this precise distinction other than saying that greater corroboration is required for information submitted by an anonymous source. *See Gates*, 462 U.S. at 244–46. Therefore, the Court will treat the use of the term "informant" in these cases to encompass those who may be classified as "confidential sources" while recognizing that greater corroboration is required for information obtained from anonymous individuals.

likely to be found sufficient to support probable cause." *United States v. Hendrix*, 664 F.3d 1134, 1138 (10th Cir. 2011) (quoting *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009)) (internal quotations omitted). In addition, information provided by an informant is "more reliable if it is confirmed by officers' independent observations." *Id.* (citing *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004)).

> **B. Detective Sandoval had probable cause to direct the arrest of Mr. Kehoe and is therefore entitled to qualified immunity.**

When examining the totality of the circumstances in the instant case, the Court agrees that the officers had probable cause to arrest Mr. Kehoe. And, because an arrest supported by probable cause does not violate the Fourth Amendment, the officers are entitled to qualified immunity. The Court first analyzes whether Detective Sandoval had probable cause to order Mr. Kehoe's arrest.

It is well established that law enforcement officials may rely on information offered by a confidential source for establishing probable cause provided that the information is "reasonably corroborated." *Gates*, 462 U.S. at 241. The more specific and descriptive the information received, the stronger basis there is for showing the existence of probable cause. *See Hendrix*, 664 F.3d at 1138; *see also United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001) (observing that "highly specific or personal details" can support the reasonable inference that a source has firsthand knowledge).

Here, the information provided by the confidential source accurately matched the sequence of events that transpired. The confidential source's description of the vehicle was accurate, as was his description of the dealer. This information was independently corroborated by Detective Sandoval's observation of the vehicle and Mr. Kehoe. Moreover, the vehicle arrived in the parking lot at the time predicted by the confidential

source. While some of the confidential source's descriptions did match every minute detail, they were accurate enough to suggest that the he or she possessed reliable firsthand knowledge of Mr. Kehoe and his affairs.

Further, officers working on the District 3 Narcotics Team were aware that drug transactions frequently took place at this particular location. (Dkt. #68 at ¶1.) Indeed, Detective Sandoval has "personally participated in more than approximately fifty narcotics investigations" there. (Dkt. 68-1 at ¶ 3.) Moreover, based on the Narcotics Team's experience, dealers are "more likely to linger around their car rather than walk[] toward any business after parking." (Dkt. #68 at ¶ 3.) Here, Mr. Kehoe opened the trunk of the vehicle, left the driver's side door open, and sat on the hood of the vehicle. (*Id.* at ¶ 11.) Thus, the information provided by the confidential source, along with Detective Sandoval's background knowledge and experience, were sufficient for the officers to have probable cause that Mr. Kehoe was about to engage in a drug sale.

Mr. Kehoe's allegations that the details are too internally inconsistent are insufficient to create a genuine issue of material fact. As an example, he directs the Court to compare the declarations of Officers Kowalski and Costin to see that the description of his physical appearance and of the make and model of the car varied (Dkt. #72 at 6.) The Court's inspection of the evidence proves his argument unavailing. Officer Kowalski's declaration explains: "Detective Sandoval communicated over the radio that a white male named 'Ryan' driving a silver in color vehicle with Bondo on the front fender was going to be in the Best Buy parking lot to conduct a methamphetamine sale." (Dkt. #68-2 at ¶ 5.) Officer Costin's declaration explains: "On August 15, 2017, I learned that a white male with brownish or reddish hair would be driving a silver or gray

13

vehicle and would arrive to the lot to sell suspected Methamphetamine and Heroin . . . . I learned his name was 'Ryan' and his gray or silver vehicle had Bondo body work on the front corner of the vehicle that did not match the rest of the vehicle." (Dkt. #68-3 at ¶ 4.) Contrary to Mr. Kehoe's argument, the statements contain more material similarities than differences. Any differences, such as "silver" versus "gray" or a white male with "brown" versus "reddish" hair, are insufficient to raise a genuine dispute of material fact concerning the confidential source's reliability.

Mr. Kehoe also suggests that Defendants' declarations contradict their statements made in the criminal case. (*See* Dkt. #72 at 4.) Not so. The Court reviewed the statements made by Officers Kowalski and Costin in the General Offense Report and finds that their statements are materially consistent with the declarations submitted in this matter. (*Compare* Dkt. #72 at 25–28, Officer Statements from General Offense Report, *with* Dkt. #68-2 and Dkt. #68-3, Declarations from Officers Kowalski and Costin.)

The fact remains that the confidential source explained that a silver or gray vehicle driven by a white man with reddish or brown hair named "Ryan" would pull into the Best Buy parking lot at a certain time. Then, as predicted, Mr. Kehoe arrived in a silver vehicle that was a similar make as what the confidential source described, and even contained the distinct feature of noticeable Bondo on the front fender. Mr. Kehoe apparently communicated to the confidential source that he had arrived and the confidential source then relayed that same information to Detective Sandoval. The information provided by the confidential source played out in real time with great

14

accuracy, even if the very minute details were not exact. The circumstances here are sufficient to support a finding that probable cause existed to arrest Mr. Kehoe.

Mr. Kehoe also contends in that the Defendants "failed to produce any evidence in support of the existence of their alleged informant." (Dkt. #72 at 5.) However, Defendants have provided sworn affidavits testifying to the existence of the confidential source, along with a recording of the radio traffic. Mr. Kehoe provides little more than a conclusory allegation in response to the evidence presented by Defendants, and he does not proffer any evidence that would present a genuine dispute of this fact. Mr. Kehoe complains, without any evidence, that the confidential source was an "informant" and thus had to meet certain criteria under Denver Police policy. (*See id.* at 8.) His conclusory assertion that the confidential source was an "informant" within the meaning of Denver Police policy is insufficient to survive summary judgment. Instead, as Defendants assert via Officer Coston's reply declaration, the information was provided by a confidential source, not an informant hired by Denver Police. (Dkt. #74-1 at 3.) Thus, the Denver Police criteria for serving as an informant are irrelevant.

Moreover, as already set forth, it is well established that an officer may rely on information given by a confidential source, provided that the information was reasonably corroborated. "When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). Mr. Kehoe's conclusory challenges to the credibility of the confidential source cannot defeat Defendants' motion for summary judgment. Further, Mr. Kehoe has not shown that Defendants are required to reveal the identity of the source to him or to the Court. *See Matter of Search of 1638 E. 2nd St.,*

*Tulsa, Okl.*, 993 F.2d 773, 774 (10th Cir. 1993) (the "informer's privilege" means that the government is "normally entitled to refuse to disclose the identity of a person who has furnished information relating to an investigation of a possible violation of law," but it can be overcome if the party seeking disclosure makes a proper showing of need (quoting *Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992.)) Apparently, Mr. Kehoe did not even attempt to learn the identity of the confidential source so as to depose him or her and adequately question his or her credibility—at oral argument Defendants represented, and Plaintiff did not contest, that no discovery was conducted in this case whatsoever.

The confidential source's information was more than sufficiently corroborated by what Detective Sandoval observed in real time and, under the circumstances, gave Detective Sandoval probable cause to arrest Mr. Kehoe. Therefore, Detective Sandoval is entitled to qualified immunity and summary dismissal of Fourth Amendment claim based on unreasonable seizure.

**C. Officers Kowalski and Costin are also entitled to qualified immunity.**

Detective Sandoval was the officer who received the confidential source's information and directed the arrest, but Officers Kowalski and Costin effectuated the arrest. Detective Sandoval's probable cause is imputed to Officers Kowalski and Costin, who were entitled to rely upon the information and investigation conducted by other members of the Narcotics Team when effectuating Mr. Kehoe's arrest.

"Under the collective knowledge doctrine, the officer who makes a stop or conducts a search need not have reasonable suspicion or probable cause. Instead, the reasonable suspicion or probable cause of one officer can be imputed to the acting

officer." *United States v. Pickel*, 863 F.3d 1240, 1249 (10th Cir. 2017). "In other words, where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *Id.* (internal citations and quotations omitted). The collective knowledge doctrine is divided into two categories: horizontal and vertical. "Under the vertical collective knowledge doctrine, an arrest or stop is justified when an officer having probable cause or reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action." *Id.* (citing *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012)). Under the vertical collective knowledge doctrine, the Court considers only whether the officer directing the arrest had probable cause, not whether the officer who made the arrest or conducted the search independently had probable cause.

Detective Sandoval, who had probable cause based on the information he received from the confidential source and his own observations, instructed Officers Kowalski and Costin to detain or arrest Mr. Kehoe, bringing them squarely within the protection of the vertical collective knowledge doctrine.[6] Because it is well established that officers may pool their knowledge together for finding probable cause, Officers Kowalski and Costin are also entitled to qualified immunity and summary dismissal of the Fourth Amendment unreasonable seizure claim against them.

---

[6] Moreover, Officers Kowalski and Costin were actually aware of the details of the investigation based on radio traffic on the District 3 channel, as Detective Sandoval communicated the information provided by the confidential source contemporaneously with when he received it. (Dkt. #68 at ¶ 5.)

### II. Mr. Kehoe's Fourth Amendment claims for unreasonable search against all Defendants fail as a matter of law.

Defendants next contend that the pat down search of Mr. Kehoe's pockets was constitutional because he consented to the search. (Dkt. #68 at 14.) "Consent to search is valid if given voluntarily." *United States v. Evans*, 937 F.2d 1534, 1537–38 (10th Cir. 1991) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222–23 (1973)). "The voluntariness of consent is a question of fact to be determined from the totality of the circumstances." *Id.* at 1538. The Tenth Circuit employs a three-part test to determine whether a suspect's consent was voluntary:

> First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, we evaluate the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*Id.* (quoting *United States v. Corral*, 988 F.2d 991, 994 (10th Cir. 1990)).

Here, video evidence shows that Mr. Kehoe consented to the pat-down search. (*See* Dkt. #68-5.) When asked by Officer Kowalski, "mind if I check your pockets?", Mr. Kehoe replied, "no, not at all." (*Id.*) There is no evidence that the officers used coercive means to improperly influence Mr. Kehoe to consent to the search, and there is no indication that Mr. Kehoe requested Officer Kowalski to cease the pat down once it began. Indeed, Mr. Kehoe appears to concede that he consented to the pat down because his response brief does not address this issue.

Because Mr. Kehoe consented to the search of his person, his claim for violation of the Fourth Amendment based on this search necessarily fails.

## **RECOMMENDATION**

In light of the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (Dkt. #68) be **GRANTED** and judgment entered in favor of Defendants and against Plaintiff.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colorado Dep't of Corrections***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:    January 5, 2022
          Denver, Colorado

                                              N. Reid. Neureiter
                                              United States Magistrate Judge